In the
United States Court of Appeals
For the Seventh Circuit

No. 99-4256

Md. Ifthekar Chowdhury,/1

Petitioner-Appellant,

v.

John Ashcroft, Attorney General, and
U.S. Immigration and Naturalization Service,

Respondents-Appellees.

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 99-C-0655--Charles R. Norgle, Sr., Judge.

No. 00-1751

Md. Ifthekar Chowdhury,

Petitioner,

v.

U.S. Immigration and Naturalization Service,

Respondent.

Petition for Review from the
Board of Immigration Appeals of the
Immigration and Naturalization Service.
No. A73 534 032--Chicago.

Argued December 1, 2000--Decided February 22, 2001

   Before Posner, Diane P. Wood, and Williams, Circuit
Judges.

   Diane P. Wood, Circuit Judge. The Immigration and
Naturalization Service ("INS") is given great
discretion to interpret its own regulations,
including regulations limiting the number of
motions to reopen proceedings that can be filed
by an alien who faces deportation (or removal, as
it is now termed). Nonetheless, that discretion
must be exercised consistently with the

regulations the Board of Immigration Appeals
("the Board") itself has issued. In this case we
find that Ifthekar Chowdhury has never received
a meaningful opportunity to be heard in
deportation proceedings because the Board has
failed to follow its own rules for reopening
proceedings in a rational way. We therefore
remand this case to the Board to consider
Chowdhury's motion to reopen on its merits.

I

   Chowdhury is a native and citizen of Bangladesh
who fled his country after being jailed and
beaten by Bangladeshi authorities following
student protests that he had organized. He made
his way to the United States in 1994 and
immediately filed for asylum. In 1996, his
application for asylum was denied, and he was
referred to deportation proceedings. A hearing in
his case was scheduled for October 2, 1996, but
Chowdhury, who at that time was represented by
counsel Archana O'Chaney, failed to appear for
it. Accordingly, an immigration judge entered an
in abstentia deportation order against him,
pursuant to 8 U.S.C. sec. 1252b(c)(1) (1994).

   On November 1, 1996, attorney O'Chaney filed a
motion to rescind the in abstentia deportation
order, claiming that Chowdhury had been in the
courthouse on the day of the October 2 hearing,
but that he did not know which room his hearing
was in and could not ask for assistance because
he does not speak English. (Although the record
does not mention what language he speaks, we
presume it is Bangla, the predominant language of
Bangladesh. Bangla, a relatively close cousin to
Hindi, is an Indo-Aryan language; like Hindi, it
is derived from Sanskrit.) O'Chaney's motion
failed to mention that her client had been
counting on her to give him the necessary
assistance, but she never showed up at the
hearing. Based on the information before him, the
immigration judge denied the motion, finding that
Chowdhury's confusion did not constitute
"exceptional circumstances" excusing his failure
to appear at the hearing, as required by 8 U.S.C.
sec.sec. 1252b(c)(3)(A) & (f)(2) (1994). O'Chaney
appealed this decision to the Board.

   While the appeal before the Board was pending,
Chowdhury married a U.S. citizen. His wife,
Sejal, filed a visa petition for relative
immigrant status on behalf of Ifthekar. This
petition was approved, but the actual visa could
not be issued until the Board granted Chowdhury
an adjustment of status to that of legal alien.
Accordingly, Chowdhury's new lawyer, Raymond
Sanders, filed a motion with the Board on
February 20, 1998, "to reopen and remand" the

case to the immigration judge to allow Chowdhury to apply for adjustment of status based on his marriage. Once again, however, Chowdhury was poorly served by his chosen agent. Attorney Sanders inexplicably failed to attach to the motion a fully documented application for adjustment of status, as required by 8 C.F.R. sec. 3.2(c)(1). The motion, therefore, was denied on November 23, 1998, because of its procedural defectiveness (i.e., the absence of the appropriate application). In the same order, the Board also finally ruled on and rejected Chowdhury's appeal regarding the O'Chaney motion to reopen and affirmed the in abstentia deportation order.

Chowdhury never filed a petition for review of the Board's November 23 order, because no one ever told him that the order existed. In spite of the fact that the faulty change of status application showed Sanders as Chowdhury's attorney, the Board sent notice of the decision only to attorney O'Chaney, who had ceased representing Chowdhury at some point over the two years during which the Board sat on the first motion to reopen. In fact, Chowdhury did not learn that his appeal had been denied until he received a "bag and baggage" order on January 7, 1999, requiring him to report for deportation.

After he received the deportation order, Chowdhury promptly took two actions. First, he asked the Attorney Registration and Disciplinary Commission of the Supreme Court of Illinois to investigate the conduct of attorneys O'Chaney and Sanders. Second, he hired his current lawyer, Mary Sfasciotti, who filed with the Board a motion to reopen the deportation proceedings, citing the ineffectiveness of Chowdhury's earlier counsel. Attached to that motion was a fully documented application for adjustment of status. But, on February 28, 2000, the Board denied the motion, finding that because the Sfasciotti motion was Chowdhury's second motion to reopen, he was foreclosed from making that motion because, under 8 C.F.R. sec. 3.2(c)(2), he could file only one motion to reopen.

Through Sfasciotti, Chowdhury also filed a petition for a writ of habeas corpus in the federal court for the Northern District of Illinois, asking the district court to enjoin the INS from executing the deportation order, based on the ineffective assistance provided by his previous counsel. On November 23, 1999, the district court dismissed that petition, reasoning that under sec. 242(g) of the Illegal Immigration Reform and Individual Responsibility Act (IIRIRA), codified at 8 U.S.C. sec. 1252(g), it did not have subject matter jurisdiction over

Chowdhury's case. In so doing, it construed Chowdhury's claim as one that arose from a decision of the Attorney General to "adjudicate cases, or execute removal orders against" him, over which the courts have no jurisdiction. See 8 U.S.C. sec. 1252(g) (2000).

Chowdhury now appeals both the district court's dismissal of the petition for a writ of habeas corpus and the Board's denial of the Sfasciotti motion to reopen, pursuant to 8 U.S.C. sec. 1105a(a) (1994), as modified by the IIRIRA, sec.sec. 309(a), (c)(1), & (c)(4).

II

A.  Habeas Corpus Petition

Although Chowdhury has made a valiant effort to explain how his case avoids the strict limits on habeas corpus jurisdiction in the immigration area, we conclude that the district court correctly rejected his claim. (This is a question we review de novo. Selbe v. United States, 130 F.3d 1265, 1266 (7th Cir. 1997).) We start, of course, with the language of the statute, which reads as follows:

[N]o court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter.

IIRIRA, sec. 242(g), codified at 18 U.S.C. sec. 1252(g). (This provision, while new, applies to Chowdhury's case, given our holding that it is fully retroactive. See Lalani v. Perryman, 105 F.3d 334, 336 (7th Cir. 1997).) Chowdhury suggests that his claim does not fit within this prohibition because it arose not from the actions of the Attorney General or the Board, but from the actions of his former attorneys. He argues that claims of ineffective assistance of counsel are common to all proceedings and do not arise from the peculiar nature of immigration proceedings or a decision to execute a deportation order. Nevertheless, at the end of the day Chowdhury was asking the district court to stay the execution of his deportation order, pending a Board decision on his motion to reopen. He was therefore attacking one of the three specific actions over which sec. 1252(g) forecloses review--the execution of a removal order--and was squarely within the jurisdictional bar. See Fedorca v. Perryman, 197 F.3d 236, 239-40 (7th Cir. 1999).

Some circuits have taken the position that sec.

1252(g) does not bar habeas corpus proceedings that were brought under 28 U.S.C. sec. 2241, as Chowdhury's was. See, e.g., Henderson v. INS, 157 F.3d 106 (2d Cir. 1998); Goncalves v. Reno, 144 F.3d 110 (1st Cir. 1998). This court, however, is not among them--at least not at that broad level of generality. Instead, we have held that sec. 1252(g) forecloses review even over sec. 2241 habeas proceedings. See Yang v. INS, 109 F.3d 1185, 1195 (7th Cir. 1997). The only exception, which was not at issue in Yang, might be for something like the set of rare cases (in the slightly different context of sec. 440(a) of the Immigration and Nationality Act) in which we have recognized that an action under sec. 2241 might still be possible notwithstanding similarly forbidding language. See LaGuerre v. Reno, 164 F.3d 1035, 1040 (7th Cir. 1998); Turkhan v. Perryman, 188 F.3d 814, 824 (7th Cir. 1999) (permitting review in a habeas corpus case notwithstanding LaGuerre, under unusual circumstances). This interpretation of sec. 1252(g) and like provisions is consistent with the Supreme Court's decision in Reno v. American-Arab Anti-Discrimination Comm., 525 U.S. 471, 485 (1999), which noted that sec. 1252(g) appeared to be designed to ensure that discretionary determinations would not be made the bases for separate rounds of judicial intervention outside the streamlined process that Congress has designed. It now appears that the Court may have more to say on this general subject soon, as it recently granted certiorari in two cases that present the question whether all jurisdiction to entertain petitions under sec. 2241 was repealed by IIRIRA's permanent rules. See St. Cyr v. INS, 229 F.3d 406 (2d Cir. 2000), cert. granted, 69 U.S.L.W. 3478 (U.S. Jan. 12, 2001) (No. 00-767); Calcano-Martinez v. INS, 232 F.3d 328 (2d Cir. 2000), cert. granted, 69 U.S.L.W. 3478 (U.S. Jan. 12, 2001) (No. 00-1011). For the present, however, American-Arab is the closest governing authority, and it is to that case we turn.

American-Arab definitively rejected the proposition Chowdhury urges, namely, that sec. 1252(g) violates Article III of the Constitution or the separation of powers doctrine, even as applied to habeas corpus petitions. This is not so, the Court found, because the statute still leaves open several avenues of judicial relief, including a timely filed petition for review of the deportation order in the appellate court. Additionally, sec. 1252(g) does not foreclose a petition for habeas corpus directed to matters other than the three discrete actions delineated in sec. 1252(g). Those other points could include, for instance, "decisions to open an investigation, to surveil the suspected violator, to reschedule the deportation hearing, to include

various provisions in the final order that is the product of the adjudication, and to refuse reconsideration of that order." American-Arab, 525 U.S. at 482.

We conclude that this is not one of those rare cases in which we would have to confront the question whether an exception to the normal bar on habeas corpus petitions must be recognized. Nor are we inclined to revisit our own interpretation of the law, although we will obviously be governed by whatever the Supreme Court decides in St. Cyr and Calcano-Martinez, to the extent these rulings bear on these questions. The district court correctly followed the statute and this court's decisions when it found that it lacked jurisdiction over Chowdhury's petition for a writ of habeas corpus.

B.  Motion to Reopen

INS regulations governing motions to reopen provide, in pertinent part, that "a party may file only one motion to reopen deportation or exclusion proceedings. . ." 8 C.F.R. sec. 3.2(c)(2). Based on this provision, the Board denied the Sfasciotti motion to reopen because attorney Sanders had already filed a "motion to reopen and remand" on February 20, 1998. (Everyone agrees that the November 1, 1996, motion to challenge the in absentia ruling did not count against the numerical limit, under 8 C.F.R. sec. 3.2(c)(3)(i) and 8 C.F.R. sec.sec. 3.23(b)(4)(iii)(A)(1) & (2), & (D). Thus, the counting at least potentially begins with the Sanders motion, not the O'Chaney motion.) The Board did not say anything about the fact that the Sanders motion had never been considered on the merits but had been dismissed based only on procedural faults.

Although we normally review such decisions by the Board only for abuse of discretion, see Nazarova v. INS, 171 F.3d 478, 482 (7th Cir. 1999); Thomas Jefferson Univ. v. Shalala, 512 U.S. 504, 512 (1994), we must also ensure that the Board's legal interpretations stay within the boundaries permitted to it and that it has not unreasonably failed to consider relevant factual information. With this in mind, we conclude that the Board's decision in this case cannot stand.

First, the regulations themselves make it clear that the Board is not required to dismiss every motion to remand that follows an earlier motion and thus in some technical sense is a "second" or later motion. Apart from the special rule pertaining to in absentia rulings, a motion with the word "reopen" in the label that is filed while an appeal is pending before the Board "may

be deemed a motion to remand for further proceedings before the Immigration Judge" such that it will not be subject to the time and numerical limitations for motions to reopen. 8 C.F.R. sec. 3.2(c)(4) (emphasis added).

The question is therefore how the Sanders motion should have been characterized: as a motion to remand not subject to the numerical limitations, or as a motion to reopen. We do not disagree that the INS has some discretion over the characterization process, given the fact that the text of the regulation says the Board "may" deem a motion one to remand, rather than it "must." But the use of the word "may" does not suggest that the Board can sort motions by throwing them down a staircase to see where they land, or by any other similarly arbitrary method. Some motions will reflect the fact that the earlier proceeding should be viewed as still ongoing, while others will be based on something that was truly finished. A similar distinction occurs in Social Security remands, where the agency and courts draw a distinction between remands under sentence 4 of the Act (reviewable immediately as final judgments) and remands under sentence 6 (not reviewable because further fact-finding is necessary before a final judgment can be entered). 42 U.S.C. sec. 405(g). See Sullivan v. Finkelstein, 496 U.S. 617, 625-26 (1990).

Here, the Board itself initially indicated that it thought it was dealing with a motion to remand, and thus the kind of motion that does not count against the applicant. The Sanders motion was unhelpfully entitled a "motion to reopen and remand," but the Board's order of November 23, 1998, specifically referred to the Sanders motion as a "motion to remand." We see no reason to presume that the Board used the term carelessly, especially since its own regulations draw a legal distinction between the two kinds of motions. Although it offered no explanation, the Board well may have considered the Sanders motion as one to remand rather than to reopen precisely because it was apparent that the agency had never heard even the first detail of the merits of Chowdhury's case. We certainly cannot say that it would have been arbitrary or unreasonable for the Board to characterize the motion as one to remand rather than reopen. What does strike us as unreasonable is the Board's after-the-fact effort to persuade us that it "really" meant to be talking about a motion to reopen, notwithstanding its use of the other terminology.

There are other important reasons as well to hold the Board to its initial choice of characterization, as reflected in the written record. This court has consistently held that

aliens have due process rights, based in the Fifth Amendment, that apply to immigration proceedings. See, e.g., Castaneda-Suarez v. INS, 993 F.2d 142, 144 (7th Cir. 1993). Even if the Board had consistently interpreted Chowdhury's motion as one to reopen, we would still need to review the course of proceedings--and to do so de novo--to ensure that they comported with basic due process standards. See Nazarova, 171 F.3d at 482. Just as we would construe a statute in a way that avoids a constitutional problem, if that is fairly possible, both we and the Board should interpret and apply administrative procedures in a way that avoids constitutional issues. Here, the Board knew that Chowdhury had never received a meaningful opportunity to be heard, and it knew that he at least alleged that this was through no fault of his. With the risk of a due process problem looming, the Board may--properly--have considered the Sanders motion as one to remand so that it would avoid escalating the issue to a constitutional level. Compare Nazarova, 171 F.3d at 485 (alien's failure to receive a meaningful opportunity to be heard provided a basis to vacate in abstentia order); Romani v. INS, 146 F.3d 737, 739 (9th Cir. 1998) (same).

Regulations are created to provide guidance and uniformity to an agency's decision-making. Those regulations, however, should not be so strictly interpreted as to provide unreasonable, unfair, and absurd results. That, we fear, is what the Board is now trying to defend, particularly given the fact that the agency has actually approved his visa petition. In attempting to convince this court that Chowdhury's situation was not completely unconscionable, counsel for the INS told us that Chowdhury still had the circuitous option of returning to Bangladesh, showing the United States consulate there his approved visa petition, and applying for a visa, which would then allow him to return. But we conclude that all that is unnecessary, because the Board's own regulations, read reasonably, show that he is entitled to a hearing now.

The soundness of interpreting the Board's system this way can also be demonstrated by considering exactly what kind of "second" petition Chowdhury was trying to file. This is not the only area of the law in which repeated petitions are disfavored. The one that appears before federal courts with the greatest frequency relates to second or successive petitions for writs of habeas corpus under 28 U.S.C. sec. 2254 or 2255. For both of these, before a prisoner is entitled to file a successive petition, he or she must obtain the permission of the court of appeals. See 28 U.S.C. sec.sec. 2244(b)(3); 2255 para. 8.

The key insight these habeas corpus cases offer is that not all petitions that are literally the "second" can or should be regarded as such for purposes of the "second or successive" petition rule. Instead, as the Supreme Court held in Slack v. McDaniel, 529 U.S. 473 (2000), the phrase "second or successive" is a term of art. Id. at 486. If a prisoner first files an initial petition that contains some claims that have properly been exhausted in state court proceedings and others that have not, the correct disposition is to dismiss that "first" petition and allow the prisoner to go back and complete the exhaustion process. When he returns with the later or "second" petition, the Court held, that is to be considered an initial petition for purposes of the permission rule. Id. at 487. As an initial petition, its filing does not require prior authorization from the court of appeals. Similarly, if the initial petition is dismissed for a purely technical reason, such as a failure to pay a filing fee, it does not count for purposes of the successive petition permission rule. See Benton v. Washington, 106 F.3d 162 (7th Cir. 1996). This is exactly what happened to Chowdhury when the Sanders application was dismissed on purely technical grounds.

In these circumstances, the fact that the Board received an initial piece of paper from Sanders need not mean that it received a legally adequate "first" motion to reopen. If we accept the analogy to successive petitions for habeas corpus relief, we conclude again that the Sanders paper should not count at all, Sfasciotti filed the first cognizable motion to reopen, and the Board should have considered the motion on its merits.

Because the Board erred at the administrative level, we have no need to reach the question whether its action violated the Fifth Amendment's due process clause because Chowdhury received ineffective assistance of counsel. This was a point Chowdhury stressed in his briefs, and he claimed that such a violation entitled him to go back to the point in the proceeding that was first tainted by the ineffective counsel and to start over. Although Chowdhury is correct to point out that there are cases holding that aliens have some residual protection against ineffective lawyers, based on the Fifth Amendment, see Castaneda-Suarez, 993 F.2d at 144; Mojsilovic v. INS, 156 F.3d 743, 748 (7th Cir. 1998), the extent of this protection is unclear. It is also unclear how the Fifth Amendment right contrasts with the Sixth Amendment right to legal representation, which does not apply to immigration proceedings. See Castaneda-Suarez, 993 F.2d at 144; Mantell v. U.S. Dept. of Justice, INS, 798 F.2d 124, 127 (5th Cir. 1986);

Mohsseni Behbahani v. INS, 796 F.2d 249, 251 n.1 (9th Cir. 1986). Logically, one would imagine that the Fifth Amendment protects less; furthermore, in the unique case of civil immigration proceedings, we would need to consider to what extent an alien must be held accountable for his or her agent's actions, which is the normal practice in civil cases. See, e.g., Link v. Wabash R.R. Co., 370 U.S. 626, 633-34 (1962). We save these issues for another day, when they are squarely presented.

III

Because Chowdhury had a right to have his motion to reopen heard on the merits by the Board, under its own regulations, we hereby REVERSE the Board's decision denying Chowdhury's February 28, 2000, motion to reopen and remand this case to the Board to consider that motion on its merits, including the application for adjustment of status. We AFFIRM the district court's dismissal of Chowdhury's habeas corpus petition. Each party shall bear its own costs on appeal.

/1 This is the way Chowdhury's name appears throughout the record. "Md." is a commonly used abbreviation for the name "Mohammed" in the languages of the Indian subcontinent. We assume that is what it means here, although we have not found any place in the record where this is clearly stated.