Shmael TURKHAN, Petitioner,

v.

IMMIGRATION AND
NATURALIZATION SERVICE,
Respondent.

Nos. 95–3838, 97–2230.

United States Court of Appeals,
Seventh Circuit.

Argued May 15, 1997.

Decided Aug. 12, 1997.

Javier H. Rubinstein (argued), Mayer, Brown & Platt, Stephen D. Berman (submitted on briefs), Chicago, IL, for Petitioner.

Samuel Der–Yeghiayan, Immigration & Naturalization Service, Chicago, IL, William J. Howard, David M. McConnell, Joan E. Smiley, Kristal A. Marlow, Marion E. Guyton, Quynh Vu (argued), Department of Justice, Civil Division, Immigration Litigation, Washington, DC, for Respondent.

Before POSNER, Chief Judge, and KANNE and EVANS, Circuit Judges.

KANNE, Circuit Judge.

Shmael Turkhan is a citizen of Iraq who immigrated to the United States in 1979. In 1990, however, Turkhan pleaded guilty to a federal charge of conspiracy to distribute cocaine. The Immigration and Naturalization Service (INS) thereafter instituted deportation proceedings against him. An immigration judge found Turkhan deportable based on his drug conviction and also denied Turkhan's application for a waiver of deportation. After the Board of Immigration Appeals (BIA) dismissed his appeal on November 7, 1995, Turkhan petitioned this Court to

review the BIA's order. Turkhan also filed a motion to reopen, asking the BIA to reconsider its decision because the BIA apparently never considered a mislabeled brief that Turkhan had filed. On May 9, 1997, however, the BIA denied the motion to reopen, and Turkhan filed a petition for us to review that BIA order as well. We heard oral argument regarding the first petition on May 15, 1997, after which Turkhan moved to consolidate his two petitions.[1] We granted the motion to consolidate on July 11, 1997, but in light of our recent decisions in *Yang v. INS*, 109 F.3d 1185 (7th Cir.1997), and *Chow v. INS*, 113 F.3d 659 (7th Cir.1997), we find that we do not have jurisdiction to review either BIA order.[2]

## ANALYSIS

The Immigration and Nationality Act (INA), codified primarily in Title 8 of the United States Code, governs most immigration cases before this Court. The INA was amended twice in 1996. First, on April 24, the President signed the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub.L. No. 104–132, 110 Stat. 1214. Second, on September 30, the President signed the Immigration Reform and Immigrant Responsibility Act of 1996 (IIRA), Pub.L. No. 104–208, Div. C, 110 Stat. 3009.

■ Before the enactment of the IIRA, § 106(a) of the INA governed the judicial review of orders of deportation and exclu-

sion. *See* 8 U.S.C. § 1105a (1996). Although § 106(a)(10) authorized district courts to hear habeas petitions regarding certain BIA actions, *see Bothyo v. Moyer*, 772 F.2d 353, 355 (7th Cir.1985), § 106(a) made the federal courts of appeals the exclusive place for judicial review of final orders of deportation. The AEDPA amended the INA, among other things repealing § 106(a)(10)'s habeas corpus remedy. In fact, § 440(a) of the AEDPA replaced this habeas corpus provision with new language restricting our normal review of final orders of deportation. With the AEDPA's amendment, § 106(a)(10) reads, in relevant part, "Any final order of deportation against an alien who is deportable by reason of having committed a criminal offense covered in section 241(a)(2)(A)(iii), (B), (C), or (D) [of the INA] ... shall not be subject to review by any court."

■ Do Turkhan's petitions fall within the scope of this AEDPA amendment? First, both of Turkhan's petitions concern BIA actions that are considered "final orders of deportation." *See Chow*, 113 F.3d at 663–64. Second, Turkhan's conviction for conspiracy to distribute cocaine is both an aggravated felony (which § 241(a)(2)(A)(iii) covers) and a controlled substance conviction (which § 241(a)(2)(B) covers). *See* 8 U.S.C. § 1251(a)(2) (1996). Third, we have held (along with all circuits that have addressed the issue) that § 440(a) of the AEDPA applies to pending cases like Turkhan's.[3] *See*

1. Turkhan moved to consolidate his petitions pursuant to § 106(a)(6) of the Immigration and Nationality Act. *See* 8 U.S.C. § 1105a(a)(6) (1996). As we discuss below, although § 106 of that act has been repealed, the repeal does not apply to Turkhan's petitions.

2. After oral argument regarding Turkhan's first petition, we asked the parties to submit supplemental briefs addressing the effect on this case of *Yang* and of the BIA's denial of Turkhan's motion to reopen. After reviewing these briefs, we have decided that neither further briefing nor oral argument is necessary regarding Turkhan's second petition. *See* Fed. R.App. P. 34(a); 7th Cir. R. 34(f); *Mather v. Village of Mundelein*, 869 F.2d 356 (7th Cir.1989).

3. Two points should be made about § 440(a)'s applicability to pending cases. First, unlike our sister circuits, we have held that § 440(a) does not apply to an alien who has conceded deportability if the alien had a colorable defense to

deportation. *See Arevalo–Lopez v. INS*, 104 F.3d 100, 101 (7th Cir.1997); *Reyes–Hernandez v. INS*, 89 F.3d 490, 492–93 (7th Cir.1996). Turkhan, however, did not concede deportability. He is therefore not protected by the exception we have created to § 440(a).

Second, the Supreme Court's recent decisions in *Hughes Aircraft Co. v. United States ex rel. Schumer*, —— U.S. ——, 117 S.Ct. 1871, 138 L.Ed.2d 135 (1997), and *Lindh v. Murphy*, —— U.S. ——, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997), do not affect our conclusion that § 440(a) applies to pending cases. *Hughes* tells us only that statutes creating new causes of action-even though phrased in jurisdictional terms—can have prohibited retroactive effects. *Hughes* does nothing to undermine the Supreme Court's holding in *Landgraf v. USI Film Products*, 511 U.S. 244, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994), that true jurisdictional statutes—those that deal with powers of courts rather than with the rights or obligations of parties—will typically not violate the

*Yang*, 109 F.3d at 1190–91. Section 440(a) therefore potentially blocks us from considering Turkhan's petitions.

Before we can reach that conclusion, however, we must also consider the effect of the IIRA. After being amended by the AEDPA, § 106 of the INA did not survive very long. Section § 306(b) of the IIRA repealed § 106 and replaced its substantive provisions with a new INA § 242 entitled "Judicial Review of Orders of Removal" and codified at 8 U.S.C. § 1252. (The IIRA now refers to deportation as "removal".) Section 309 of the IIRA, however, makes these new judicial review provisions inapplicable to aliens who are in deportation proceedings as of April 1, 1997.[4] Section 309(c)(1)(B) states that for such aliens, "the proceedings (including judicial review thereof) shall continue to be conducted without regard to" IIRA amendments such as § 306(b). Turkhan, of course, was in deportation proceedings on April 1, so pre-IIRA law (i.e., the INA as amended by the AEDPA) will control the judicial review in this case. There is one exception, however. Section 309(c) of the IIRA establishes several transitional rules that *do* apply to aliens in deportation proceedings on April 1. In particular, § 309(c)(4)(G) of the IIRA specifies that for final orders of deportation entered on or after October 31, 1996, "there shall be no appeal permitted in the case of an alien who is inadmissible or deportable by reason of having committed a criminal offense covered in … section 241(a)(2)(A)(iii), (B), (C), or (D)" of the INA (as amended by the AEDPA). Because the BIA's order dismissing Turkhan's original appeal was entered in 1995, Turkhan's first petition is unaffected by IIRA § 309(c). The BIA's order dismissing

Turkhan's motion to reopen, however, was entered in 1997. Furthermore, Turkhan was deportable based on a cocaine conviction covered by § 241(a)(2)(A)(iii) and § 241(a)(2)(B) of the INA. Section 309(c) of the IIRA therefore applies to Turkhan's second petition for review and potentially blocks our consideration of that petition.

To summarize so far, Turkhan's first petition (which seeks review of the BIA's initial deportation order) is unaffected by the IIRA and is therefore governed by the INA as amended by the AEDPA. Turkhan's second petition (which seeks review of the BIA's denial of Turkhan's motion to reopen) is affected by § 309(c) of the IIRA and is therefore governed by both the AEDPA amendments and § 309(c). The express terms of § 440(a) of the AEDPA are alone enough to preclude our consideration of Turkhan's petitions, and § 309(c) of the IIRA only reinforces that conclusion with respect to Turkhan's second petition. Turkhan must therefore present us with some argument as to why we may nonetheless hear his petitions.

In his original brief, Turkhan made the broad assertion that AEDPA § 440(a) violated both the Fifth Amendment's Due Process Clause and Article III of the Constitution by taking away required judicial review of final orders of deportation. Subsequent to his briefing of the case, however, we decided *Yang*, which squarely rejected both of these claims. *See Yang*, 109 F.3d at 1196–97. At oral argument, therefore, Turkhan narrowed his argument to the assertion that § 440(a) should be read to allow judicial review of *constitutional* claims. And indeed, Turkhan does complain of constitutional violations. He asserts 1) that he received ineffective

statutory presumption against retroactivity. *See Hughes*, —— U.S. at ——, 117 S.Ct. at 1878. Section 440(a) of the AEDPA merely "regulate[s] the secondary conduct of litigation and not the underlying primary conduct of the parties," *id.*, and it therefore does not have a prohibited retroactive effect. *Lindh*, meanwhile, holds that Congress intended chapter 153 of the AEDPA to apply to pending cases. The Court's analysis, however, hinged on a "negative implication" created with respect to that chapter by § 107(c) of the AEDPA. *See Lindh*, —— U.S. at ——, 117 S.Ct. at 2068. The AEDPA creates no comparable implication concerning the applicability of § 440(a).

4. Section 306(c) of the IIRA initially specified that the new judicial review provisions were generally to apply to all final orders of deportation or removal and motions to reopen filed on or after the date of the IIRA's enactment, which was September 30, 1996. On October 11, 1996, however, the President signed a technical correction to the IIRA that made the new judicial review provisions applicable generally only to deportation proceedings initiated after April 1, 1997. *See* Extension of Stay in United States for Nurses, Pub. L. No. 104–302, § 2, 110 Stat. 3656, 3657 (1996).

assistance of counsel in his hearing before the immigration judge, and 2) that the BIA violated due process when it did not consider his mislabeled brief. If, therefore, § 440(a) still allows judicial review of constitutional claims, Turkhan's foot may be back in the courthouse door.

Two weeks before oral argument in this case, however, we decided *Chow.* In that case, we declined to read an exception for constitutional claims into the language of § 440(a) of the AEDPA. *See Chow,* 113 F.3d at 668–70. We held, in other words, that § 440(a) bars *all* claims brought pursuant to INA § 106(a) if the petitioner is deportable for having committed one of the criminal offenses specified by § 440(a). Significantly, however, we also held that the broad language of § 440(a) is not so broad as to preclude judicial review of claims brought pursuant to *other* statutes. *See id. at* 669.

Turkhan now frontally attacks our holding in *Chow.* He argues that *Chow* is inconsistent with our *en banc* holdings in *Czerkies v. Department of Labor,* 73 F.3d 1435 (7th Cir. 1996), and *Marozsan v. United States,* 852 F.2d 1469 (7th Cir.1988). In those cases, we held that our construction of statutes must be informed by a presumption "against slamming the courthouse door in the face of holders of constitutional claims," *Czerkies,* 73 F.3d at 1441. Turkhan argues that we should likewise construe § 440(a) to permit review of constitutional claims brought pursuant to INA § 106(a). *Czerkies* and *Marozsan,* however, involved true door-closing statutes—the constitutional claims in those cases would be reviewed either pursuant to the statutes at issue or not at all. *Chow,* on the other hand, makes clear that even if review pursuant to INA § 106(a) is foreclosed, "other avenues for relief remain open," *Chow,* 113 F.3d at 669. We mentioned, for example, the possibility of a writ of habeas corpus authorized under 1) the general grant of habeas corpus jurisdiction, *see* 28 U.S.C. § 2241, 2) the All Writs Act, *see* 28 U.S.C. § 1651, or 3) the Suspension Clause of the Constitution, *see* U.S. Const. art. I, § 9, cl. 2. Indeed,

because other means of review remained available, we were able to avoid "the difficult task of determining to what extent Congress may limit the jurisdiction of the lower federal courts to hear constitutional claims," *Chow,* 113 F.3d at 668. *Chow,* therefore, is consistent with this circuit's precedent and decisively refutes Turkhan's contention that § 440(a) must still permit constitutional challenges brought pursuant to INA § 106(a).[5] Our consideration of Turkhan's first petition is therefore blocked by § 440(a) of the AEDPA, and our consideration of his second petition is blocked both by § 440(a) and by the nearly identical provisions of its cousin, § 309(c) of the IIRA.

Turkhan's petitions are Dismissed for want of jurisdiction.

---

5. Turkhan asserts in his supplemental brief that *Chow* is inconsistent with the Fifth Circuit's decision in *Anwar v. INS,* 107 F.3d 339 (5th Cir. 1997). On June 16, 1997, however, the Fifth Circuit withdrew its opinion in *Anwar,* finding

that the petitioner in that case was actually not covered by § 440(a) of the AEDPA. *See Anwar v. INS,* 116 F.3d 140, 142–43 (5th Cir.1997). 5th Cir.1997).