## Shmael TURKHAN, Betty Jean Turkhan, and Oriana M. Turkhan, Petitioners–Appellants,

### v.

## Brian R. PERRYMAN, Respondent–Appellee.

### No. 98–1964.

United States Court of Appeals, Seventh Circuit.

Argued Jan. 15, 1999.

Decided Aug. 16, 1999.

Rehearing and Rehearing En Banc Denied Oct. 12, 1999.

---

Before POSNER, KANNE, and EVANS, Circuit Judges.

KANNE, Circuit Judge.

Shmael Turkhan appeals the decision of the district court denying his petition for habeas corpus. In that petition, Turkhan sought review of his deportation order to Iraq. Turkhan argues that the district court erred in concluding that his constitutional rights were not violated during the adjudication of his application for a discretionary waiver of deportation. He asks that we reverse the district court's ruling and remand his case to an immigration judge for a new hearing. For the reasons set forth below, we reject Turkhan's appeal and affirm the decision of the district court.

## I. HISTORY

Turkhan is a citizen of Iraq who lawfully immigrated to the United States as a permanent resident alien in 1979. The named co-petitioners, Betty Jean Turkhan and Oriana Miriam Turkhan, are Turkhan's spouse and child, respectively, and are both United States citizens. Brian R. Perryman is the Chicago District Director of the Immigration and Naturalization Service ("INS").

On April 17, 1990, Turkhan pleaded guilty to one count of conspiracy to distribute cocaine in violation of 21 U.S.C. § 846. As a result of that conviction, the INS instituted deportation proceedings against Turkhan by issuing an order to show cause why Turkhan should not be deported on the basis of his drug conviction. The INS charged that Turkhan was deportable pursuant to § 241(a)(4)(B) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1251(a)(4)(B) (1989), as an alien convicted of an "aggravated felony," and pursuant to INA § 241(a)(11), 8 U.S.C. § 1251(a)(11) (1989), as an alien convicted of a "controlled substance" violation.[1] Turkhan's

Royal F. Berg (argued), Chicago, IL, for Petitioners–Appellants.

Samuel Der-Yeghiayan, Immigration & Naturalization Service, Chicago, IL, Papu Sandhu (argued), Department of Justice, Civil Division, Immigration Litigation, Washington, DC, for Respondent–Appellee.

---

**1.** Since the issuance of the order to· show cause in this case, the grounds of deportabili-

drug conviction met the statutory definitions of both an aggravated felony, *see* 8 U.S.C. § 1101(a)(43) (1994), and a controlled substance violation, *see* 21 U.S.C. § 802(6) (1994), and INA § 241 provides that any alien convicted of an offense falling within the scope of either of these provisions is subject to deportation upon the order of the Attorney General of the United States.

At his deportation hearing in October 1994, Turkhan conceded to the immigration judge ("IJ") that he was deportable on the grounds charged by the INS. Based on these admissions, the IJ found Turkhan deportable by clear, convincing, and unequivocal evidence. Turkhan then applied for discretionary relief from deportation under INA § 212(c), 8 U.S.C. § 1182(c) (1994). At that time, INA § 212(c) granted the Attorney General (or the Attorney General's delegates, such as the Board of Immigration Appeals ("BIA") and IJ) discretionary authority to waive the deportation of a deportable alien because of extraordinary hardship to the deportee or his family, or other exceptional circumstances.[2] *See LaGuerre v. Reno*, 164 F.3d 1035, 1037 (7th Cir.1998); *Reyes–Hernandez v. INS*, 89 F.3d 490, 491 (7th Cir.1996). Although the IJ found Turkhan statutorily eligible for a deportation waiver, he rejected Turkhan's request for relief under INA § 212(c). After considering several factors in support of Turkhan's request for a deportation waiver, including the length of

Turkhan's legal residence in this country, his family ties to the United States and Iraq, evidence of rehabilitation, and the hardship to him and his family if he was to be deported to Iraq, the IJ concluded that Turkhan failed to demonstrate that he possessed "unusual or outstanding" equities or sufficient rehabilitation outweighing the negative aspects of his case and warranting the granting of a deportation waiver under INA § 212(c).

Turkhan appealed the IJ's decision to the BIA. In his appeal, Turkhan asserted two primary claims. First, he claimed that the IJ erred in denying his request for a deportation waiver. Second, he alleged that his counsel rendered him ineffective assistance by failing to request an Assyrian interpreter so that his wife could testify at the hearing before the IJ on his behalf. On November 7, 1995, the BIA affirmed the decision of the IJ and dismissed Turkhan's appeal. The BIA found that Turkhan failed to show that the IJ abused his discretion in denying him a discretionary deportation waiver and that his claim of ineffective assistance of counsel was without merit. As a result, the BIA issued a final order of deportation.

Turkhan filed a petition for review of the BIA's final order with this Court. While that petition was pending before us, Turkhan filed a motion to reopen his case before the BIA. He requested that the BIA reconsider his application for a deportation

---

ty pursuant to which Turkhan is subject to deportation have twice been renumbered. The former INA § 241(a)(4)(B), referring to aggravated felony convictions, was redesignated in 1990 as INA § 241(a)(2)(A)(iii), 8 U.S.C. § 1251(a)(2)(A)(iii), and later in 1996, as 8 U.S.C. § 1227(a)(2)(A)(iii). At the same times, the former INA § 241(a)(11), referring to controlled substance violations, was redesignated as INA § 241(a)(2)(B)(i), 8 U.S.C. § 1251(a)(2)(B)(i), and later as 8 U.S.C. § 1227(a)(2)(B)(i).

**2.** At the time of Turkhan's hearing before the IJ, INA § 212(c) provided in relevant part:
Aliens lawfully admitted for permanent residence who temporarily proceeded abroad voluntarily and not under an order

of deportation, and who are returning to a lawful unrelinquished domicile of seven consecutive years, may be admitted in the discretion of the Attorney General . . . .
8 U.S.C. § 1182(c)(1994); *see also Guillen-Garcia v. INS*, 60 F.3d 340, 341 n. 2 (7th Cir.1995).
Although INA § 212(c) facially applied only to aliens returning to the United States after time spent abroad, we previously concluded that § 212(c) also applies to lawful permanent aliens facing deportation, like Turkhan, who have not left the United States but meet the seven-year requirement. *See Guillen-Garcia*, 60 F.3d at 341 n. 2; *Cortes-Castillo v. INS*, 997 F.2d 1199, 1202 (7th Cir.1993).

waiver under INA § 212(c) on the ground that the BIA did not give adequate consideration to his arguments in support of his ineffective assistance of counsel claim. In his motion, Turkhan argued that the BIA failed to consider a mislabeled brief that he had filed in connection with his first appeal to the BIA. On May 9, 1997, the BIA denied Turkhan's motion to reopen his case. The BIA found that, as an alien found deportable for having committed an "aggravated felony," Turkhan was now statutorily ineligible for INA § 212(c) discretionary relief pursuant to § 440(d) of the newly enacted Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub.L. No. 104–132, 110 Stat. 1214.[3] Section 440(d) of the AEDPA amended INA § 212(c) to restrict the availability of the relief sought by Turkhan by, *inter alia*, adding certain drug offenses to the list of deportable offenses that made criminal aliens ineligible for discretionary waivers of deportation.[4] Relying on the Attorney General's decision in *In re Soriano*, Interim Decision No. 3289, 1996 WL 426888, in which the Attorney General ruled that AEDPA § 440(d) applied retroactively to criminal aliens with pending applications for deportation waivers, the BIA concluded that Turkhan was now statutorily ineligible for discretionary relief under INA § 212(c). Alternatively, the BIA found that the record belied any claim by Turkhan that his counsel rendered ineffective assistance during the deportation

hearing. Turkhan then filed a second petition with this Court, asking us to review the BIA's denial of his motion to reopen his case.

We consolidated Turkhan's two petitions for appeal and our opinion is reported at *Turkhan v. INS*, 123 F.3d 487 (7th Cir. 1997) (*"Turkhan I"*). In that opinion, we did not reach the merits of Turkhan's constitutional claims because we found that we lacked jurisdiction to review his challenges to either of the BIA orders in light of recent amendments to the INA contained in the AEDPA and the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), Pub.L. 104–208, Div. C, 110 Stat. 3009. *See Turkhan I*, 123 F.3d at 488–90.

Prior to these amendments, INA § 106(a) governed the judicial review of orders of deportation. *See* 8 U.S.C. § 1105a (1994). Section 106(a) provided that judicial review of final orders of deportation was within the exclusive province of the federal courts of appeal, although INA § 106(a)(10) authorized district courts to hear habeas corpus petitions in limited circumstances. *See Turkhan I*, 123 F.3d at 488. Congress significantly altered this framework for judicial review in 1996 with the passage of the AEDPA and the IIRIRA. Section 440(a) of the AEDPA repealed INA § 106(a)(10) to eliminate habeas corpus jurisdiction in the district courts and curtailed our normal review of final

---

**3.** The AEDPA was enacted by Congress while Turkhan's first petition before this Court and his motion to reopen before the BIA were still pending.

**4.** Section 440(d) of the AEDPA modified INA § 212(c), 8 U.S.C. § 1182(c), to provide in relevant part:

Aliens lawfully admitted for permanent residence who temporarily proceeded abroad voluntarily and not under an order of deportation, and who are returning to a lawfully unrelinquished domicile of seven consecutive years may be admitted in the discretion of the Attorney General ... This subsection shall not apply to an alien who is deportable by reason of having committed any criminal offense covered in section

241(a)(2)(A)(iii), (B), (C), or (D), or any offense covered by section 241(a)(2)(A)(ii), for which both predicate offenses are, without regard to the date of their commission, otherwise covered by section 241(a)(2)(A)(i) of this title.

INA § 212(c), as amended by AEDPA § 440(d), has since been repealed by and replaced by INA § 240A(b), 8 U.S.C. § 1229b(b), which continues to vest discretion in the Attorney General or her delegates to waive deportation only for certain classes of aliens. *See LaGuerre*, 164 F.3d at 1037. This change has no substantive effect on any aspect of Turkhan's eligibility for discretionary relief under the INA.

orders of deportation by amending INA § 106 to provide that "[a]ny final order of deportation against an alien who is deportable by reason of having committed a criminal offense covered in section 241(a)(2)(A)(iii), (B), (C), or (D) [of the INA] ... shall not be subject to review by any court."

We found that both of Turkhan's petitions fell within the scope of AEDPA § 440(a). First, each of the petitions concerned BIA decisions that were considered final orders of deportation. Second, Turkhan's conviction for conspiracy to distribute cocaine is a deportable criminal offense under the INA. The offenses are classified as both an aggravated felony (covered by INA § 241(a)(2)(A)(iii)) and a controlled substance violation (covered by INA § 241(a)(2)(B)(i)). Third, AEDPA § 440(a) had been construed by this Court to apply retroactively to pending deportation cases like Turkhan's. *See Yang v. INS*, 109 F.3d 1185, 1190–91 (7th Cir. 1997). As a result, we concluded that we no longer had subject matter jurisdiction to review Turkhan's petitions pursuant to the express terms of § 440(a) of the AEDPA.[5] *See Turkhan I*, 123 F.3d at 488–89.

Turkhan argued that we should construe AEDPA § 440(a) to allow judicial review of constitutional claims brought pursuant to INA § 106(a)—a proposition we rejected in *Chow v. INS*, 113 F.3d 659, 668–70 (7th Cir.1997), a case decided two weeks prior to oral argument in *Turkhan I*. In *Chow*, we declined to read an exception for

5. We also determined that Turkhan's second petition fell within the scope of certain IIRIRA transitional amendments to the INA. The IIRIRA contained two sets of provisions: permanent and transitional. One of the permanent provisions, IIRIRA § 306, repealed the judicial review process set forth in INA § 106(a), as amended by the AEDPA, and replaced it with a new INA § 242, which continues to curtail judicial review of final deportation orders. Specifically, the new INA § 242(a)(2)(C) provides that "[n]otwithstanding any other provision of law, no court shall have jurisdiction to review any final order of removal against an alien who is removable by reason of having committed a [covered criminal offense] ...." 8 U.S.C. § 1252(a)(2)(C)(Supp. II 1996). In addition, the permanent IIRIRA added a new catch-all provision in INA § 242(g), which provides that "[e]xcept as provided in this section and notwithstanding any other provision of law, no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter." 8 U.S.C. § 1252(g)(Supp. II 1996). IIRIRA § 306(c)(1) indicates that the catch-all provision is generally applicable to all deportable aliens and that the provision "shall apply without limitation to claims arising from all past, pending, or future exclusion, deportation, or removal proceedings" under the INA. *See also Lalani v. Perryman*, 105 F.3d 334, 336 (7th Cir.1997).

Section 309 of the IIRIRA, however, made the new substantive judicial review provisions contained in INA § 242 inapplicable to aliens who were involved in deportation proceedings as of April 1, 1997. Since Turkhan was involved in deportation proceedings on that date, we concluded that both of Turkhan's petitions were subject to the judicial review provisions of the INA, as amended by the AEDPA. *See Turkhan I*, 123 F.3d at 489.

Although both of Turkhan's petitions were governed by the AEDPA amendments to the INA, we determined that Turkhan's second petition was also governed by IIRIRA § 309(c)(4)(G), a transitional provision that applies to aliens in deportation proceedings as of April 1, 1997, for whom final orders of deportation have been entered on or after October 31, 1996. *See Turkhan I*, 123 F.3d at 489. Although the IIRIRA's transitional provisions were not codified in the U.S.Code, we noted that IIRIRA § 309(c)(4)(G) was substantially similar to AEDPA § 440(a) in that it provided that "there shall be no appeal permitted in the case of an alien who is inadmissible or deportable by reason of having committed a criminal offense covered by ... section 241(a)(2)(A)(iii), (B), (C), or (D)" of the INA, as amended by the AEDPA. *Turkhan I*, 123 F.3d at 489 (quoting IIRIRA § 309(c)(4)(G)). Because Turkhan was deportable based on a criminal offense covered by § 241(a)(2)(A)(iii) and § 241(a)(2)(B)(i) and the BIA's order dismissing Turkhan's second appeal was issued in 1997, we concluded that IIRIRA § 309(c) provided further support for our conclusion that we were precluded from considering Turkhan's second petition.

constitutional claims into the language of AEDPA § 440(a). Rather, we held that AEDPA § 440(a) bars judicial review of all claims brought pursuant to INA § 106(a), provided the petitioner is deportable for having committed one of the criminal offenses listed in AEDPA § 440(a). *See Chow*, 113 F.3d at 668–70. Turkhan argued that the decision in *Chow* was inconsistent with prior holdings of this Court in which we held that our construction of statutes must be informed by a presumption "against slamming the courthouse door in the face of holders of constitutional claims." *Turkhan I*, 123 F.3d at 490 (quoting *Czerkies v. Department of Labor*, 73 F.3d 1435, 1441 (7th Cir.1996)); *see also Marozsan v. United States*, 852 F.2d 1469 (7th Cir.1988).

We rejected Turkhan's contention on the ground that AEDPA § 440(a) was not a true door-closing statute. Even if the recent amendments to the INA had foreclosed judicial review of final deportation orders pursuant to INA § 106(a), we believed that "other avenues for relief remain[ed] open," and, therefore, our decision in *Chow* did not necessarily run afoul of the presumption against precluding judicial review of executive decisions. *Turkhan I*, 123 F.3d at 490 (citing *Chow*, 113 F.3d at 669). One such avenue mentioned in *Chow*, which we also recognized in *Turkhan I*, was the possibility of a writ of habeas corpus in the district court pursuant to: (1) the general grant of habeas corpus jurisdiction, *see* 28 U.S.C. § 2241; (2) the All Writs Act, *see* 28 U.S.C. § 1651; or (3) the Suspension Clause of the Constitution, *see* U.S. Const. art. I, § 9, cl. 2. Given that other means of judicial review potentially remained available to Turkhan, we rejected his argument that AEDPA § 440(a) must be construed to permit the court of appeals to review constitutional challenges brought pursuant to INA § 106(a), and we dismissed both of his petitions for want of jurisdiction. *See Turkhan I*, 123 F.3d at 490.

Following our decision, Turkhan filed a petition for a writ of habeas corpus with the district court seeking review of his final deportation order. Naturally, Turkhan's petition asserted that the district court had jurisdiction under all three of the habeas vehicles mentioned in *Chow* and *Turkhan I* to review his constitutional challenges to the two BIA orders. With respect to this petition, he alleged that his due process and equal protection rights had been violated by the BIA's retroactive application of AEDPA § 440(d) to preclude him from seeking a discretionary deportation waiver pursuant to the former INA § 212(c). He also alleged that his right to due process of law had been violated during the deportation proceedings because he was denied effective assistance of counsel at his original deportation hearing before the IJ and because the BIA failed to take into consideration a number of factors relevant to the determination of whether to grant INA § 212(c) relief. These allegedly unconsidered factors included that: (1) it would be fundamentally unfair to deport him to Iraq because, as an Assyrian Christian, he would face a clear probability of persecution and (2) it would be violative of international agreements to which the United States is a party if the INS deported him to Iraq.

Because Turkhan alleged constitutional violations, the district court found that it had habeas corpus jurisdiction to hear Turkhan's petition pursuant to the Suspension Clause. The district court concluded that "[w]hatever the intent of Congress to eliminate the habeas appeals of deportable aliens, the constitutional writ must always survive." On the merits, however, the district court found that Turkhan failed to state a constitutional claim in his petition which would warrant the court's interference with the INS's decision to deport him. Accordingly, the district court entered summary judgment in favor of the government and denied Turkhan's habeas corpus petition.

On appeal, Turkhan seeks review of the district court's decision denying his habeas corpus petition. He argues that the district court had subject matter jurisdiction to hear his habeas petition, that he remains eligible for INA § 212(c) relief notwithstanding AEDPA § 440(d), and that the district court erred in concluding that his right to due process had not been violated during the immigration proceedings. Turkhan asks us to reverse the district court's decision on the merits and remand his case to an immigration judge for a new hearing on his application for an INA § 212(c) waiver of deportation judged by the criteria applied to such applications before the enactment of AEDPA § 440(d).

The government asserts that our recent decision in *LaGuerre* directly controls the outcome of this case and requires us to dismiss Turkhan's appeal on the ground that the district court lacked jurisdiction to hear Turkhan's habeas petition under the 1996 AEDPA amendments to the INA. In the alternative, the government contends that AEDPA § 440(d) makes Turkhan ineligible for INA § 212(c) relief, and, therefore, Turkhan's petition must fail even if we were to find that the district court had jurisdiction. Finally, the government submits that in the unlikely event we conclude that the district court had jurisdiction and that AEDPA § 440(d) should not be applied retroactively to Turkhan's pending deportation proceedings, Turkhan is not entitled to the relief he seeks because his claims of constitutional deprivations are without merit.

## II. ANALYSIS

The government is correct in asserting that *LaGuerre* governs the disposition of Turkhan's case on appeal. In *LaGuerre*, which we decided after the district court issued its opinion and two weeks before oral argument in the present matter, we consolidated for decision two cases in which aliens like Turkhan had been convicted of deportable criminal offenses. In the first case, the BIA had refused to

consider the criminal alien's application for an INA § 212(c) waiver of deportation on the ground that AEDPA § 440(d) barred such discretionary waivers for aliens ordered deported on the basis of having been convicted of a covered criminal offense. The alien then sought a writ of habeas corpus in the district court under 28 U.S.C. § 2241 challenging the BIA's retroactive application of AEDPA § 440(d) to deportation proceedings pending at the time Congress passed the AEDPA. The district court affirmed the decision of the BIA and the alien appealed. *See LaGuerre*, 164 F.3d at 1037. The second case differed only in that the alien prevailed in the district court by convincing the judge that AEDPA § 440(d) denies equal protection of the laws because it bars discretionary waivers only for aliens deportable on the basis of specific criminal offenses and not for aliens excludable on the basis of those same offenses. The government appealed from the judgment entered in that case. *See id.*

The first issue we addressed in *LaGuerre* is the same jurisdictional issue raised before us in this case: whether the 1996 Amendments to the INA should be construed as to preclude deportable criminal aliens from obtaining judicial review of their final deportation orders in the district court by way of habeas corpus. *See id.* at 1037–38. *LaGuerre* answered that question in the affirmative, holding that the 1996 amendments, in particular AEDPA § 440(a), eliminated habeas corpus jurisdiction for the class of aliens covered by that section. *Id.* In so holding, we foreclosed the possibility mentioned in *Chow* and *Turkhan I* that deportable aliens might be able to seek habeas corpus review in the district court.

As we explained in *LaGuerre*, prior to 1961 the primary means by which aliens could seek judicial review of final deportation orders was to petition the district courts for a writ of habeas corpus. *See id.* at 1035; *see also Singh v. Reno*, 182 F.3d 504 (7th Cir. 1999). In 1961, however,

Congress streamlined the judicial review process of deportation orders by making the courts of appeals the exclusive forum for review of such orders, *see* INA § 106, 8 U.S.C. § 1105(a) (1994), although Congress did preserve a limited right of habeas corpus for situations in which the alien could not obtain judicial review in the appellate courts, *see* INA § 106(a)(10), 8 U.S.C. § 1105(a)(10) (1994); *see also LaGuerre,* 164 F.3d at 1035. This framework for review of deportation orders existed for approximately thirty-five years until Congress substantially modified the INA with the passage of the AEDPA in 1996. AEDPA § 440(a) amended INA § 106 to provide that a final order of deportation against an alien who is deportable by reason of having committed a covered criminal offense shall not be subject to review by any court and repealed INA § 106(a)(10)'s statutory grant of a limited right to apply for habeas corpus in the district court.

■ In light of the prior framework of judicial review employed under the INA and the subsequent changes implemented by the AEDPA, we held in *LaGuerre* that AEDPA § 440(a) operates to preclude district courts from exercising habeas corpus jurisdiction over appeals by the class of deportable criminal aliens encompassed by § 440(a).[6] 164 F.3d at 1040. We reasoned that the purpose of AEDPA § 440(a) "was not to restore the pre–1961 regime and slow down deportation by creating two layers of judicial review, rather than one as under the regime that prevailed for all deportees between 1961 and ... 1996." *Id.* at 1039. Instead, "[t]he purpose was to curtail and speed up judicial review of

deportation orders directed against disfavored classes of criminals ...." *See id.*

Although our holding in *LaGuerre* largely eliminated judicial review by way of habeas corpus for those groups of criminal aliens covered by AEDPA § 440(a), we also held that judicial review of their final deportation orders was not totally foreclosed by the 1996 Amendments. *Id.* at 1040. Given that we had virtually extinguished the possibility of seeking relief in the district courts, we revisited the issue of whether AEDPA § 440(a) should be construed to allow criminal aliens to present their constitutional challenges directly in the court of appeals. *Id.* "Mindful of the presumption that executive resolutions of constitutional issues are judicially reviewable," we found that criminal aliens could now seek direct review in the court of appeals. *Id.; see also Singh,* 182 F.3d 504. As we explained in *LaGuerre,* permitting the deportee to seek review of substantial constitutional claims directly in the court of appeals ameliorates the "layering of judicial review." 164 F.3d at 1040. Thus, "judicial review is curtailed as Congress intended, but enough of a safety valve is left to enable judicial correction of bizarre miscarriages of justice." *Id.* Indeed, the government acknowledges as much on appeal in the instant case, conceding that the court of appeals is the appropriate forum to the extent any review of final deportation orders is required by the Constitution.

■ It appears that *LaGuerre* compels us to reach the conclusion that the district court lacked subject matter jurisdiction to hear Turkhan's appeal pursuant to AED-

6. In *LaGuerre,* we recognized that AEDPA § 440(a) might not close the door to habeas corpus jurisdiction in the district court under the Suspension Clause when the alien challenges the final deportation order on the ground that the immigration authorities are improperly exercising jurisdiction over him. *See* 164 F.3d at 1038; *see also Singh,* 182 F.3d 504. Because there is no question in this case that Turkhan has been detained pursuant to a valid order issued by the appropriate

authorities, we need not address the potential reach of the constitutional writ of habeas corpus. *See Singh,* 182 F.3d 504. As we explained in *LaGuerre,* when the issue the alien seeks to press is his eligibility for discretionary relief from deportation under INA § 212(c), the Suspension Clause is not implicated because such a challenge "does not raise doubts about the jurisdiction of the Immigration and Naturalization Service over [him]." 164 F.3d at 1039.

PA § 440(a).[7] And since it is now too late for Turkhan to properly file a petition for direct review in this Court, *see LaGuerre*, 164 F.3d at 1040, that conclusion would require us to dismiss Turkhan's appeal and modify the district court's judgment to base its dismissal on want of jurisdiction.

However, our jurisdictional inquiry is not at an end at this point, for we also stated in *LaGuerre* that "if for reasons beyond the alien's control he could not have raised his substantial constitutional issue in this court by seeking review here directly under section 440(a), he may be able to proceed in the district court under 28 U.S.C. § 2241." *Id.* Although we indicated that such cases would be extremely rare, if any case justifies allowing a criminal alien to pursue his habeas corpus petition in the district court, and a subsequent appeal in this Court, it is this one. Turkhan filed two prior petitions with this Court attempting to seek direct judicial review of his constitutional claims. Based on the law of this Circuit at the time we reviewed his consolidated appeal, we concluded that we did not have jurisdiction to hear his claims pursuant to AEDPA § 440(a) and IIRIRA § 309(c). In dismissing his petition for want of jurisdiction, however, we mentioned in dicta that other avenues for relief potentially remained available for him to seek judicial review of his claims, including the possibility of a writ of habeas corpus in the district court. Assuming for the moment that Turkhan's case involves "substantial constitutional claims," we believe it would be unfair now to prejudice Turkhan for relying on our directive and seeking habeas corpus relief in the district court. Turkhan could not have known that we would later eliminate habeas corpus jurisdiction in the district court for the classes of aliens contemplated by AEDPA § 440(a). Indeed, even if Turkhan suspected that the

1996 amendments to the INA operated to divest district courts of habeas corpus jurisdiction and that the proper forum for judicial review of his claims rested in this Court, our prior ruling effectively left him with little recourse but to pursue his claims in the district court. Accordingly, we believe the district court had jurisdiction to hear his habeas corpus petition, and, consequently, we have jurisdiction to hear this appeal. *Cf. Singh*, 182 F.3d 504 (finding that a criminal alien who filed a writ of habeas corpus in the district court is nevertheless entitled to direct review of his constitutional claims in the court of appeals because the alien "could not have known that he was in the wrong court— our case law pre-*LaGuerre* would have directed him to the district court rather than to this Court").

Even though we find that Turkhan can satisfy the jurisdictional requirements necessary to seek judicial review in this Court, AEDPA § 440(d) still presents an insurmountable obstacle for Turkhan. All of Turkhan's alleged claims of constitutional error committed during the immigration proceedings stem from the circumstances surrounding the denial of his request for a discretionary waiver of deportation under INA § 212(c). Prior to the 1996 amendments, INA § 212(c) vested in the Attorney General, or her delegates, the discretionary authority to grant certain deportable aliens a waiver from deportation, thereby allowing them to remain legally in this country. *See, e.g., Dashto v. INS*, 59 F.3d 697, 702–03 (7th Cir.1995). However, AEDPA § 440(d) amended INA § 212(c) to make criminal aliens, like Turkhan, ineligible to apply for and receive discretionary waivers of deportation. Relying on AEDPA § 440(d) and the Attorney General's opinion in *In re Soriano*, Interim Decision

---

7. To the extent that the second order handed down by the BIA regarding Turkhan's case is also governed by the IIRIRA amendments to the INA, we note that we have held that district courts lack habeas corpus jurisdiction over valid deportation orders under that framework as well. *See Singh*, 182 F.3d 504; *Parra v. Perryman*, 172 F.3d 954, 956–57 (7th Cir.1999); *Yang*, 109 F.3d at 1194–96.

No. 3289, 1996 WL 426888, in which the Attorney General ruled that AEDPA § 440(d) applies retroactively to pending INA § 212(c) application cases regardless of when the application waiver was made, the BIA found that Turkhan was no longer eligible to receive a waiver of deportation. Turkhan's ineligibility for discretionary relief under INA § 212(c) necessarily moots any claims he may have that substantial constitutional violations occurred during the immigration proceedings that prejudiced his request for a deportation waiver.

On appeal, Turkhan urges us not to adopt the position of both the Attorney General and the BIA that AEDPA § 440(d) applies retroactively to pending cases, such as his, to bar criminal aliens from receiving discretionary deportation waivers. He raises two arguments in support of his contention that he still remains eligible for INA § 212(c) relief notwithstanding AEDPA § 440(d). First, Turkhan argues that the retroactive application of AEDPA § 440(d) to his case violates his right to due process because the Attorney General's holding in *In re Soriano*, and the BIA's reliance thereon in applying AEDPA § 440(d) retroactively to his pending INA § 212(c) application, violates the presumption against retroactivity identified by the Supreme Court in *Landgraf v. USI Film Products, Inc.*, 511 U.S. 244, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994). Second, Turkhan argues that the BIA's conclusion in *In re Fuentes–Campos*, Interim Decision No. 3318, 1997 WL 269368 (BIA May 14, 1997), that AEDPA § 440(d)'s bar applies only to an alien who is "deportable" for a specified criminal offense, and not to an alien "excludable" for that same offense, violates his right to equal protection under the law. Turkhan submits that it is irrational to allow criminal aliens found excludable from the United States for having committed certain criminal offenses to seek discretionary relief under INA § 212(c) while at the same time barring criminal aliens found deportable for having committed those same offenses from doing so.

**■** We turn first to address Turkhan's argument that the retroactive application of AEDPA § 440(d) to extinguish his eligibility for a deportation waiver under INA § 212(c) violates his right to due process. Generally, a court should not apply a newly enacted statutory provision retroactively to a pending case unless Congress has clearly stated that the provision should so apply. *See Landgraf*, 511 U.S. at 280, 114 S.Ct. 1483; *see also Lindh v. Murphy*, 521 U.S. 320, 117 S.Ct. 2059, 2062–63, 138 L.Ed.2d 481 (1997); *LaGuerre*, 164 F.3d at 1041. In *Landgraf*, the Supreme Court provided the framework for determining whether a provision like AEDPA § 440(d) should apply to cases pending at the time of the provision's enactment.

> When a case implicates a federal statute enacted after the events in suit, the court's first task is to determine whether Congress has expressly prescribed the statute's proper reach. If Congress has done so, of course, there is no need to resort to judicial default rules. When, however, the statute contains no such express command, the court must determine whether the new statute would have retroactive effect, i.e., whether it would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed. If the statute would operate retroactively, our traditional presumption teaches that it does not govern absent clear congressional intent favoring such a result.

511 U.S. at 280.

The first step under *Landgraf* then is to look at the statutory text and determine whether Congress has expressly prescribed whether AEDPA § 440(d) should be applied prospectively or retroactively. In *LaGuerre*, we determined that AEDPA § 440(d) is silent as to this issue—Congress did not express an intention either

way. 164 F.3d at 1040–41. The AEDPA did not expressly specify an effective date for § 440(d). Nor could we draw any inferences from analogous AEDPA provisions that curtail the rights of aliens— some of these provisions are expressly prospective, *see, e.g.*, AEDPA §§ 440(f), 421(b), 435(b), and some are expressly retroactive, *see, e.g.*, AEDPA §§ 401(f), 413(g). *See LaGuerre*, 164 F.3d at 1040. This made it impossible for us to ascertain from the text alone with any degree of certainty whether AEDPA § 440(d) should be applied to pending cases. *See id.* at 1041.

In the absence of any express indication as to AEDPA § 440(d)'s proper reach, *Landgraf* directs a court to resort to a series of judicial default rules to determine whether the new provision should have retroactive effect. *See Landgraf*, 511 U.S. at 280, 114 S.Ct. 1483. Under these rules, a provision that impairs substantive rights, duties, or obligations or increases substantive liabilities or sanctions will not be applied retroactively to a pending case. *See id.* at 278–80, 114 S.Ct. 1483; *see also Reyes–Hernandez*, 89 F.3d at 492. As the Court explained in *Landgraf*, if the provision "attaches new legal consequences" to conduct occurring before the provision became effective by "impair[ing] rights that a party possessed when enacted, increas[ing] a party's liability for past conduct or impos[ing] new duties with respect to transactions already completed," then retroactive application of that provision is improper. *Landgraf*, 511 U.S. at 280, 114 S.Ct. 1483; *see also Chow*, 113 F.3d at 665.

On the other hand, intervening procedural and jurisdictional provisions are regularly applied to pending cases despite the absence of any express Congressional intent that they should apply retroactively. *See Landgraf*, 511 U.S. at 273–75, 114 S.Ct. 1483; *Reyes–Hernandez*, 89 F.3d at 492. "The reasoning behind this distinction is that people are much more likely to rely on substantive than procedural law." *LaGuerre*, 164

F.3d at 1041. For jurisdictional provisions, the presumption is to apply the provision to pending cases because "[a]pplication of a new jurisdictional rule usually 'takes away no substantive right but simply changes the tribunal that is to hear the case'" and because "jurisdictional statutes 'speak to the power of the court rather than to the rights or obligations of the parties.'" *Landgraf*, 511 U.S. at 274, 114 S.Ct. 1483 (quoting *Hallowell v. Commons*, 239 U.S. 506, 508, 36 S.Ct. 202, 60 L.Ed. 409 (1916) and *Republic Nat'l Bank v. United States*, 506 U.S. 80, 100, 113 S.Ct. 554, 121 L.Ed.2d 474 (1992) (Thomas, J., concurring)). Similarly, present law normally governs in situations involving newly enacted procedural provisions because "[p]eople normally don't rely on such provisions in planning and conducting the affairs of life, and so the reliance interest which is the foundation of the interpretive principle limiting retroactive application is not engaged." *Reyes–Hernandez*, 89 F.3d at 492; *see also Landgraf*, 511 U.S. at 275, 114 S.Ct. 1483 ("Because rules of procedure regulate secondary rather than primary conduct, the fact that a new procedural rule was instituted after the conduct giving rise to the suit does not make application of the rule at trial retroactive.").

According to *Landgraf*, our second task is to determine whether AEDPA § 440(d) has a retroactive effect upon a covered criminal alien's substantive rights, duties or obligations or whether it effects mere changes in procedure or jurisdiction. In *LaGuerre* and *Reyes–Hernandez*, we recognized that AEDPA § 440(d) could operate in either fashion depending on the particular circumstances of the case. *See LaGuerre*, 164 F.3d at 1041; *Reyes–Hernandez*, 89 F.3d at 492–93. Primarily, AEDPA § 440(d) effects a jurisdictional change by divesting the Attorney General, or her delegates, of authority to grant discretionary waivers to certain classes of criminal aliens. However, we noted that in certain cases, AEDPA § 440(d) could

operate to attach a new legal consequence to a completed event—the criminal alien's decision to concede deportability. In such a case, the application of AEDPA § 440(d) to the criminal alien's case could well have an impermissible retroactive effect. *See LaGuerre,* 164 F.3d at 1041; *Reyes–Hernandez,* 89 F.3d at 492–93.

As we explained in *LaGuerre,* a person facing deportation might concede deportability, despite a colorable defense, in reliance on having a good shot at a discretionary waiver of deportation under INA § 212(c). *See LaGuerre,* 164 F.3d at 1041. "In that event, to abolish such waiver for his class of deportees after he had relied by forgoing a challenge to deportability would pull the rug out from under him." *Id.* In such cases, we reasoned that it was "unlikely that Congress intended to mousetrap aliens into conceding deportability by holding out to them the hope of relief under section 212(c) only to dash that hope after they had conceded deportability." *Reyes–Hernandez,* 89 F.3d at 492. The subsequent change in the law effected by AEDPA § 440(d), therefore, "might turn a strategic decision to forgo a defense to deportability in favor of an application for discretionary relief into a 'mousetrap,' leaving the alien with no judicial recourse." *Pilch v. INS,* 129 F.3d 969, 971 (7th Cir. 1997).

 Based on these considerations, we held that AEDPA § 440(d) applies retroactively to bar covered criminal aliens from seeking a discretionary waiver of deportation under § 212(c) *except* in those cases in which the alien conceded deportability before the AEDPA became law *and* had a colorable defense to deportability. *See Reyes–Hernandez,* 89 F.3d at 493; *see also LaGuerre,* 164 F.3d at 1041; *Pilch,* 129 F.3d at 971. By "deportability," we mean the determination that the petitioner is (1) an alien and (2) deportable by reason of having committed a criminal offense listed in the INA as a deportable offense. *See generally Yang,* 109 F.3d at 1192. For if a criminal alien does not have at least a

colorable defense to deportability, then he has lost nothing by conceding deportability and applying AEDPA § 440(d) retroactively to his pending application for a discretionary waiver of deportation under INA § 212(c) does not violate due process. *See Reyes–Hernandez,* 89 F.3d at 493; *see also Yang,* 109 F.3d at 1190–92.

In this case, although Turkhan apparently conceded his deportability before the IJ, we find no indication in Turkhan's submissions to this Court that he would have challenged deportability if he had known that he could not have obtained a waiver of deportation under INA § 212(c). And even if Turkhan maintains that he relied on the availability of INA § 212(c) relief when conceding deportability, the record clearly shows that Turkhan did not have a colorable defense to the charges of deportability alleged in the order to show cause. First, Turkhan admits that he is an alien, not a United States citizen. Second, Turkhan cannot credibly contest the determination that he was deportable because, in proving the charges of deportability before the IJ, the INS proffered a copy of Turkhan's conviction (on his plea of guilty) for conspiracy to distribute cocaine in violation of 21 U.S.C. § 846. As already noted, a criminal conviction under that section satisfies the statutory definitions of an aggravated felony and a controlled substance violation, both of which clearly constitute deportable offenses under the INA. For his part, Turkhan does not point us toward any colorable defense he may have had to deportability, and we find nothing in the record that would convince us that Turkhan had such a defense. As such, we fail to see how Turkhan's concession of deportability comes anywhere close to a strategic litigation decision. Therefore, our concerns about the potential mousetrapping effect of AEDPA § 440(d) are not implicated.

Nor do we believe that Turkhan's guilty plea to the underlying drug offense was induced by any reliance on discretionary relief under INA § 212(c). Turkhan can-

not seriously maintain that his hope of receiving a discretionary waiver of deportation when his prison term ended motivated him to plead guilty to and serve over four years in prison as punishment for a crime he did not commit. As we explained in *LaGuerre,* "[i]t would border on the absurd to argue that these aliens might have decided not to commit drug crimes, or might have resisted conviction more vigorously, had they known that if they were not only imprisoned but also, when their prison term ended, ordered deported, they could not ask for a discretionary waiver of deportation." 164 F.3d at 1041.

Accordingly, we conclude that applying AEDPA § 440(d) retroactively to bar Turkhan from remaining eligible for a discretionary waiver of deportation under INA § 212(c) does not violate his right to due process.

▇▇▇ Turkhan's equal protection challenge to the retroactive application of AEDPA § 440(d) need not delay us long because we have already fully considered and rejected in *LaGuerre* the same argument Turkhan presses in this case. In *LaGuerre,* one of the criminal aliens convinced the district court that the retroactive application of AEDPA § 440(d) to his pending application for INA § 212(c) relief violated equal protection of the laws because § 440(d) bars deportation waivers only for aliens deportable on the basis of having committed particular offenses and not for aliens excludable from the United States on the basis of those same offenses. *See id.* at 1037. INA § 212(c), as amended by AEDPA § 440(d), bars deportable criminal aliens inside the country from applying for a discretionary waiver while INA § 212(h), 8 U.S.C. § 1182(h)(1994), allows certain excludable criminal aliens seeking reentry to seek such discretionary relief. As such, the INA treats aliens within the same criminal class differently depending on whether they are inside the country and wish to remain or have left the country and wish to return. *See Singh,* 182 F.3d 504.

▇▇▇▇ Congress has very broad powers in the immigration and naturalization arena over the admission of aliens and its power to expel or exclude aliens is largely immune from judicial control. *See Fiallo v. Bell,* 430 U.S. 787, 792, 97 S.Ct. 1473, 52 L.Ed.2d 50 (1977). Our review in immigration cases is necessarily of a limited scope because "the power over aliens is of a political character and therefore subject only to narrow judicial review." *Id.* at 792, 97 S.Ct. 1473 (quoting *Hampton v. Mow Sun Wong,* 426 U.S. 88, 101 n. 21, 96 S.Ct. 1895, 48 L.Ed.2d 495 (1976)).

▇▇▇▇ In *Fiallo,* the Supreme Court indicated that Congress need not treat all aliens alike if there is a legitimate reason for treating them differently. *See* 430 U.S. at 794–95, 97 S.Ct. 1473. As long as a statutory classification or distinction does not impinge on any fundamental rights or target any suspect class, it will not be found to run afoul of the Equal Protection Clause provided there is a rational basis for the classification. *See Vacco v. Quill,* 521 U.S. 793, 117 S.Ct. 2293, 2297, 138 L.Ed.2d 834 (1997), *see also Heller v. Doe,* 509 U.S. 312, 320, 113 S.Ct. 2637, 125 L.Ed.2d 257 (1993) ("[A] classification must be upheld against equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification." (internal quotation marks and citation omitted)). Under this standard of review, if there is a plausible reason for Congress's action, our inquiry is at an end. *United States R.R. Retirement Bd. v. Fritz,* 449 U.S. 166, 179, 101 S.Ct. 453, 66 L.Ed.2d 368 (1980); *see also Leal–Rodriguez v. INS,* 990 F.2d 939, 951 (7th Cir. 1993) ("Whether an immigration provision is constitutional depends only on the existence of a facially legitimate and bona fide reason for its enactment." (internal quotation marks and citations omitted)). Thus, a classification in the immigration context that treats similarly situated groups of aliens differently violates equal protection

only if there is no rational basis for doing so.

In *LaGuerre*, we found that Congress's more lenient treatment of excludable aliens has a rational basis insofar as it creates an incentive for deportable aliens to leave the country at their own expense. 164 F.3d at 1041; *accord Singh*, 182 F.3d 504. As we explained in *LaGuerre*:

> A rational and indeed sensible reason can readily be assigned to Congress's more lenient treatment of excludable as distinct from deportable aliens: it creates an incentive for deportable aliens to leave the country—which is after all the goal of deportation—without their having to be ordered to leave at the government's expense. To induce their voluntary departure, a little carrot is dangled before them, consisting of the opportunity to seek a waiver should they seek to return to the country and by doing so trigger exclusion proceedings.

164 F.3d at 1041. Based on our reasoning in *LaGuerre*, we reject Turkhan's claim that AEDPA § 440(d) violates his right to equal protection under the law.

Because Turkhan is no longer eligible for discretionary relief under INA § 212(c), we need not address his remaining claims of alleged constitutional violations by the immigration authorities in denying his application for, or by Turkhan's counsel in presenting his case for, a waiver of deportation.

### III. CONCLUSION

Although we find that we have jurisdiction to hear Turkhan's appeal from the district court's denial of his habeas corpus petition, we conclude that AEDPA § 440(d) makes Turkhan ineligible to apply for, or receive, a discretionary waiver of deportation under INA § 212(c). Accordingly, the judgment of the district court is AFFIRMED.